**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STANLEY MARGOLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LANTHEUS HOLDINGS, INC., PAUL M. BLANCHFIELD, BRIAN A. MARKISON, ROBERT J. MARSHALL, and AMANDA MORGAN,<br><br>　　　　　Defendants. | Case No.: 1:25-cv-07491-JHR<br><br>Hon. Jennifer H. Rearden |
| INDIANA PUBLIC RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LANTHEUS HOLDINGS, INC., BRIAN MARKISON, PAUL M. BLANCHFIELD, ROBERT J. MARSHALL, JR., and AMANDA MORGAN,<br><br>　　　　　Defendants. | Case No.: 1:25-cv-09234-JHR<br><br>Hon. Jennifer H. Rearden |

**MOVANT SEBASTIEN HAZARD'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND SELECTION OF COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT......................................................................................................................... 1

    A.    THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE  PSLRA. ..... 1

    B.    DR. HAZARD IS MORE MOTIVATED TO LITIGATE THE ACTION. ....................... 2

    C.    THE COURT SHOULD APPOINT INDIANA AND DR. HAZARD AS CO-LEAD
    PLAINTIFFS.......................................................................................................... 3

CONCLUSION..................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,*
258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................................ 3

*Bell v. Ascendant Solutions, Inc.,*
No. 3:01-cv-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 18, 2002) ......................... 8

*Berg v. Guthart,*
No. 5:14-CV-00515-EJD, 2014 U.S. Dist. LEXIS 105357 (N.D. Cal. July 30, 2014).............. 2

*Burke v. Ruttenberg,*
102 F. Supp. 2d 1280, 1297 (N.D. Ala. 2000) ........................................................... 2

*Burnham v. Qutoutiao Inc.,*
No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752 (S.D.N.Y. Nov. 4, 2020) .................. 4

*In re Cable & Wireless, PLC Sec. Litig.,*
217 F.R.D. 372 (E.D. Va. 2003) .............................................................................. 8

*China Agritech, Inc. v. Resh,*
138 S. Ct. 1800 (2018) .......................................................................................... 5

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,*
269 F.R.D. 291 (S.D.N.Y. 2010) .............................................................................. 4

*Faris v. Longtop Fin. Techs. Ltd.,*
No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec. L.
Rep. (CCH) P96,562 (S.D.N.Y. Oct. 4, 2011) ........................................................... 3

*Foley v. Transocean Ltd.,*
272 F.R.D. 126 (S.D.N.Y. 2011)............................................................................. 4

*Freudenberg v. E*Trade Fin. Corp.,*
No. 07-CV-8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 16, 2008) ......................... 5, 7

*Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.,*
No. 3:09-cv-00882, 2010 U.S. Dist. LEXIS 42915 (M.D. Tenn. Apr. 30, 2010)................... 2

*Johnson v. Pozen, Inc.,*
No. 07-CV-599, 2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008) ........................... 5

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) .................... 4

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
   No. 00-152 (JEI), 2000 U.S. Dist. LEXIS 5481 (D.N.J. April 24, 2000) ............................... 2, 7

*In re Lucent Techs., Inc. Sec. Litig.*,
   221 F. Supp. 2d 472 (D.N.J. 2001) ...................................................................... 6

*Martin v. BioXcel Therapeutics, Inc., et. al.*,
   Case No. 3:23-cv-00915-SVN (D. Conn. Oct. 4, 2023) ............................................. 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................... 8

*Pelletier v. Endo Int'l PLC*,
   No. 17-cv-5114, 2021 U.S. Dist. LEXIS 21207 (E.D. Pa. Feb. 4, 2021) ...................................... 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................... 8

*Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*,
   409 F. Supp. 2d 482 (S.D.N.Y. 2006) .................................................................... 8

*Reitan v. China Mobile Games & Ent. Group, Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014) ..................................................................... 4

*In re Star Gas Sec. Litig.*,
   No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005*)* ........................ 7

*Winter v. Stronghold Digital Mining, Inc., et. al.*,
   Case No. 1:22-cv-03088-RA (S.D.N.Y. Aug. 04, 2022) .............................................. 7

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) .................................................................... 7

**Statutes**

15 U.S.C. §78u-4 ......................................................................................... 1, 2, 5

**PRELIMINARY STATEMENT**

In any class action securities litigation matter, the shareholder with the largest financial interest in the outcome of the litigation is ordinarily appointed as the lead plaintiff to oversee the action. On occasion the court will appoint more than one shareholder to serve in this capacity, such as when the class would be best served by broader representation from more than one investor. That is the case here. Movant Sebastien Hazard lost approximately $177,011.10 on his Lantheus Holdings, Inc. ("Lantheus") investment. This amount represents a significantly more meaningful percentage of Dr. Hazard's overall savings and investment portfolio than the $3,214,527.48 loss sustained by the Indiana Public Retirement System ("Indiana"), who claims approximately $59 billion in assets under management. Unquestionably, maximizing the potential recovery in this action would be exceedingly more important to Dr. Hazard than Indiana. Thus, Dr. Hazard is uniquely qualified to represent the interests of other retail investors who, like himself, are depending heavily on the outcome of this lawsuit and will see to it that the action secures the best recovery possible.

Excluding Dr. Hazard from serving as a lead plaintiff in this action would be detrimental to the case. Similar to the cases cited below, he should be appointed as a "co-lead" plaintiff along with Indiana and its counsel appointed as "co-lead" counsel.

**ARGUMENT**

**A.    THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA.**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as lead plaintiff are required to

file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### B.    DR. HAZARD IS MORE MOTIVATED TO LITIGATE THE ACTION.

With a loss of $177,011.10 in his Lantheus investment, Dr. Hazard has a substantial interest in the outcome of this litigation. This loss represents approximately 5% of Dr. Hazard's overall investment portfolio. While Indiana sustained a loss of $3,214,527.48, that amount is a mere fraction of its overall assets under management. Indeed, based on Indiana's total assets under management of $59 billion, its loss in connection with Lantheus amounts to less than 0.01% of its portfolio. Logically, Dr. Hazard, like other retail investors who suffered similar losses relative to their overall portfolios, is much more motivated to litigate this action than Indiana or any other institutional investor who is not dependent on achieving any particular recovery in the lawsuit. *See Berg v. Guthart*, No. 5:14-CV-00515-EJD, 2014 U.S. Dist. LEXIS 105357, at *19 (N.D. Cal. July 30, 2014) ("Because his Intuitive stock represents such a large percentage of his portfolio, Berg will certainly be motivated to pursue this case vigorously."); *Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.,* No. 3:09-cv-00882, 2010 U.S. Dist. LEXIS 42915, at *12 (M.D. Tenn. Apr. 30, 2010) ("To be sure, the plaintiff with the larger numeric loss is not automatically the plaintiff with the 'largest financial interest.' . . . some courts measure the 'largest financial interest' by a plaintiff's losses as a percentage of its assets or holdings." (citations omitted) (citing *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1297, 1342 (N.D. Ala. 2000)); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.,* No. 00-152 (JEI), 2000 U.S. Dist. LEXIS 5481, at *5-6 (D.N.J. April

2

24, 2000) ("some courts measure the 'largest financial interest' by a plaintiff's losses as a percentage of its assets or holdings.").

### C.     THE COURT SHOULD APPOINT INDIANA AND DR. HAZARD AS CO-LEAD PLAINTIFFS.

The PSLRA provides a "presumption" of lead plaintiff in favor of the movant with the "largest financial interest" in the litigation that also satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. Dr. Hazard and Indiana possess the "largest financial interest" in the litigation, as demonstrated above. In addition, Dr. Hazard is typical of the other members of the class and adequate to serve as lead plaintiff, and therefore should be appointed co-lead plaintiff in this action. *See* Dr. Hazard's Opening Brief, ECF No. 10 at 9-11.

"At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec. L. Rep. (CCH) P96,562, at *12 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)). "Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. Dr. Hazard has indeed made this *prima facie* showing of typicality and adequacy—as explained in Dr. Hazard's opening brief, his claims are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. *See* ECF No. 10 at 10. Further, Dr. Hazard purchased Lantheus securities at artificially inflated prices and sustained damages as a result thereof, just like the other purported class members. *Id*. These facts are routinely held to be sufficient to satisfy the preliminary threshold inquiry of typicality at

the lead plaintiff stage. *See Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *13-14 (S.D.N.Y. Nov. 24, 2008).

Similarly, Dr. Hazard also meets the adequacy requirements for serving as co-lead plaintiff. To satisfy the adequacy requirement at this stage of the proceedings, Dr. Hazard must make a preliminary showing that "(1) [his choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) [he has] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Dr. Hazard's interests are aligned with other members of the class, as there is no evidence of any antagonism between him and the other class members. *See* ECF No. 10 at 10; *Reitan v. China Mobile Games & Ent. Group, Ltd.*, 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014). Dr. Hazard also has a significant and compelling interest in litigating the claims in light of the substantial losses he has incurred. *See* ECF No. 11-2; *Burnham v. Qutoutiao Inc.*, No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at *6-7 (S.D.N.Y. Nov. 4, 2020). Dr. Hazard's certification (submitted in support of his opening brief) evidences his willingness to serve as representative of the class. *See* Dr. Hazard's Certification, ECF No. 11-1. Dr. Hazard also submitted a declaration in support of his motion. *See* Dr. Hazard's Declaration, ECF No. 11-4. Dr. Hazard resides in Boston, Massachusetts, and possesses a medical degree. *Id*. He considers himself to be a sophisticated investor, having been investing in the stock market for 10 years. *Id*. Dr. Hazard is currently practicing biotechnology and drug development. *Id*. Finally, Dr. Hazard's selection of Levi & Korsinsky, LLP as lead counsel evidences his adequacy to serve as lead plaintiff, as Levi & Korsinsky, LLP is a firm with significant experience leading class action securities fraud lawsuits. *See* Firm Resume, ECF No. 11-5. This will ensure the vigorous and adequate prosecution of the Class's claims. *See City of Monroe Emps.' Ret. Sys. v.*

*Hartford Fin. Servs. Grp.*, 269 F.R.D. 291, 297 (S.D.N.Y. 2010). Facts such as these are regularly held sufficient in terms of meeting the threshold inquiry of adequacy at the lead plaintiff selection stage.

Together with Indiana, Dr. Hazard should be appointed co-lead plaintiff. The Court has the express authority to appoint more than one lead plaintiff under the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) (The court "shall appoint as lead plaintiff the member or *members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (emphasis added)); *see also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (Supreme Court observing that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups" and that "80% of securities class actions in post-PSLRA data sample had two or more co-lead counsel firms"). Appointing Dr. Hazard and his counsel to a "co-lead" structure would benefit the class for several reasons.

<u>First</u>, if appointed as co-lead plaintiff, Dr. Hazard would protect the class from unnecessary challenges to the other movants' standing, adequacy, and other unique defenses. *See Johnson v. Pozen, Inc.*, No. 07-CV-599, 2008 U.S. Dist. LEXIS 12004, at *7 (M.D.N.C. Feb. 15, 2008); *Freudenberg v. E\*Trade Fin. Corp.*, No. 07-CV-8538, 2008 U.S. Dist. LEXIS 62767, at *21 (S.D.N.Y. July 16, 2008) (appointing individual investor to protect against potential future conflicts). This will be necessary given Indiana's investment history in Lantheus. Specifically, Dr. Hazard purchased his Lantheus securities at various points during the class period, specifically in January and April 2025 when Indiana did not make any purchases. *Compare* Dr. Hazard's Loss Chart, ECF No. 11-2, *with* Indiana's Loss Chart, ECF No. 15-4. Since both movants purchased at various times during the class period, each movant will be able to provide a unique perspective into why they decided to invest in Lantheus.

5

*Pelletier v. Endo Int'l PLC*, No. 17-cv-5114, 2021 U.S. Dist. LEXIS 21207 (E.D. Pa. Feb. 4, 2021), is instructive in this regard. In that case, the institutional investor was found "unable to adequately perform its role" as lead plaintiff. *Id.* at *32. The court replaced the lead plaintiff with another institutional investor and three individual investors. *Id*. at *34. Judge Michael M. Baylson explained his reasoning for appointing individuals as co-lead plaintiffs, stating in pertinent part that "they were actively involved personally, or through their personal relationships with investment advisors and stock brokers, and making decisions for the purchase or sale of Endo stock." *Id*. at *35-36. In addition, "this Court believes that having an institutional investor" as lead plaintiff and "three individuals serving as co-lead Plaintiffs, would provide a broad range of testimony going to the merits of the claim." *Id*. at *36.

*Second*, Dr. Hazard stands ready, willing and able to serve as lead plaintiff. His certification is accurate and correctly completed. *See* ECF. No. 11-1. He is "willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary." *Id*. at ¶ 3. Considering Dr. Hazard lives in Boston, Massachusetts just a short drive to New York City, the class will benefit from Dr. Hazard's appointment due to the fact that he would be able to appear for deposition and/or trial on behalf of the class representatives. *See In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483 (D.N.J. 2001) (appointing co-lead plaintiffs provides "additional representation [that] may benefit the class and provide flexibility, if needed, in the future").

*Third*, Dr. Hazard will represent the individual- and retail-investor members of the class of Lantheus shareholders if appointed to the "co-lead" structure. Courts around the country have approved the rationale behind appointing an individual investor to an otherwise institutional-led plaintiff group. As explained time and again, appointing an individual investor as a co-lead

6

plaintiff allows the lead plaintiffs to "represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone." *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999); *accord Winter v. Stronghold Digital Mining, Inc., et. al.,* Case No. 1:22-cv-03088-RA (S.D.N.Y. Aug. 04, 2022) (appointing individual investor with institutional investor); *Martin v. BioXcel Therapeutics, Inc., et. al.*, Case No. 3:23-cv-00915-SVN (D. Conn. Oct. 4, 2023) (appointing individual investor with institutional investor); *Freudenberg*, 2008 U.S. Dist. LEXIS 62767, at *21 (appointing individual investor to protect against potential future conflicts). Similar to the *BioXcel* case, the individual and institutional movants here have "unique attributes that make them well suited to serve as co-Lead Plaintiffs." *Martin*, Case No. 3:23-cv-00915-SVN, Dkt. No. 79, p. 6. *See also In re Star Gas Sec. Litig.,* No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827, at *13 (D. Conn. Apr. 8, 2005*)* (appointing co-Lead Plaintiffs who all had "unique attributes").

*Campbell Soup* illustrates Dr. Hazard's argument here. In that case, the court appointed two individuals and a competing institutional investor to serve as lead plaintiffs. The institutional investor claimed a financial interest of nearly ten times larger than the individuals' losses. 2000 U.S. Dist. LEXIS 5481, at *5-6. The court acknowledged that the PSLRA "does not define whether the concept of 'largest financial interest' should be viewed in terms of absolute dollars or as a percentage of a plaintiff's net worth." *Id*. at *5. The court reasoned that the institutional investor's alleged loss was "a drop in the bucket" in reference to the "billions of dollars" it managed, whereas the claimed losses suffered by the individual investors amounts to a "substantial portion of their retirement funds." *Id*. at *7. Because the institution "has the largest financial interest in the suit, and the interest of [the individuals], combined, is the second largest," and the court "also consider[ed] it desirable to have both an institutional investor . . . and individual investors . . .

7

included as lead plaintiffs since each may bring a unique perspective to the litigation," both the institution and individuals were appointed lead plaintiff. *Id*. at \*11; *see also Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (appointing individual investors and an institutional investor that "could collectively fulfill the functions of lead plaintiff in a fair, adequate, and effective manner"); *Bell v. Ascendant Solutions, Inc.,* No. 3:01-cv-0166-P, 2002 U.S. Dist. LEXIS 6850, at \*17 (N.D. Tex. Apr. 18, 2002) (noting that inclusion of institutional investor with individual investors "improves diversity of experience" for the class). Similar to the individual investors in these cases, Dr. Hazard would provide the precise type of balance that courts in the past intended to provide by appointing individual investors as co-lead plaintiffs.

*Fourth*, Dr. Hazard and his counsel should be appointed to a "co-lead" structure for the purpose of protecting the class from the issues discussed above. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 419, 420 (S.D.N.Y. 2004) ("courts have determined that the interests of a proposed class will be served best by the appointment of co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group" and "creating a co-lead structure here will have the salutary effect of providing greater stability"); *In re Cable & Wireless, PLC Sec. Litig.,* 217 F.R.D. 372, 376 (E.D. Va. 2003) (appointing individual investor and institutional investor as co-Lead Plaintiffs to ensure that "all class members will adequately be represented" and to advance the purpose of the PLSRA to "get institutional investors involved in the prosecution of securities class action suits"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ("The use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling, not only of the

8

knowledge and experience, but also of the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation.").

### CONCLUSION

For all of the foregoing reasons, Dr. Hazard respectfully requests that the Court: (1) appoint Dr. Hazard to serve as co-lead plaintiff in the Action; (2) approve Dr. Hazard's selection of Levi & Korsinsky, LLP as co-lead counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: November 20, 2025                    Respectfully Submitted,

                                            **LEVI & KORSINSKY, LLP**
                                            */s/ Adam M. Apton*
                                            Adam M. Apton
                                            33 Whitehall Street, 27th Floor
                                            New York, NY 10004
                                            Tel: (212) 363-7500
                                            Fax: (212) 363-7171
                                            Email: aapton@zlk.com

                                            *Proposed Co-Lead Counsel for Co-Lead Plaintiff Movant Sebastien Hazard and the Class*

9

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Movant, certifies that this brief contains 2,716 words, which complies with the word limit of L.R. 7.1(c).

Executed on November 20, 2025.

/s/ Adam M. Apton
Adam M. Apton

10